**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SALVATORE DAY, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | **Civil Action No. 10-4011 (MAS) (TJB)** |
| | : | |
| JACKSON TOWNSHIP, et al., | : | **MEMORANDUM OPINION** |
| | : | |
| Defendants. | : | |
| | : | |

**SHIPP, District Judge**

On May 25, 2012 Jackson Township ("Jackson" or the "Township"), Chief of Police Matthew Kunz ("Chief Kunz") and Sergeant John Decker ("Sgt. Decker") (collectively, the "Supervisor Defendants"), jointly filed a Motion for Summary Judgment. (Supervisor Defs.' Br., ECF No. 26-1.) On the same day, individual police officers Joseph Candido ("Candido"), Michael Cavallo ("Cavallo"), James Reynolds ("Reynolds"), Gregory Vidalis ("Vidalis"), and Detective Scott Conover ("Det. Conover") (collectively, the "Officer Defendants"), also filed a Motion for Summary Judgment. (Officer Defs.' Br., ECF No. 25-1.) Plaintiffs filed opposition on July 2, 2012, (Pls.' Opp'n, ECF No. 32), and July 6, 2012,[1] (Pls.' Sealed Opp'n, ECF No. 34). The Supervisor Defendants filed a Reply Brief on July 16, 2012. (Supervisor Defs.' Reply, ECF No. 36.) Oral argument on the matter was held on January 25, 2013.

---

[1] Plaintiffs' motion to file his opposition to the Supervisors Defendants' motion for summary judgment under seal was granted in an order issued by the Hon. Tonianne J. Bongiovanni ("Judge Bongiovanni") on July 24, 2012. (ECF No. 37.)

## I.   Background

### A.   Factual Background

On December 20, 2009, Officers Vidalis, Candido, Reynolds, and Cavallo responded to 20 Hemlock Hill Road, Jackson, New Jersey, the home of Plaintiffs' neighbor, Gary Jeter, on a report of a dispute. (Officer Defs.' Br. 6 ¶ 16.) As a result of this dispute, the officers proceeded to 77 Hemlock Hill Road, the home of the Plaintiffs Salvatore and Joanne Day. (*Id.* ¶ 17.) As Officer Candido exited his truck, the Plaintiffs began yelling at the officers from the front door of Plaintiffs' residence. (*Id.* ¶ 18.) Plaintiffs deny that they were yelling at the Officer Defendants, rather, Plaintiffs contend that Salvatore Day opened the door and advised the officers that "if this has to do with my neighbor, go and get my neighbor and bring him here and we all can discuss this." (Pls.' Opp'n 6 ¶ 6.) Officer Candido advised Salvatore Day that he needed to calm down and that the officers needed to speak with him. (Officer Defs.' Br. 7 ¶ 19.) Plaintiffs responded that only one officer would be allowed into his residence. (*Id.* ¶ 20.) Officer Candido advised Plaintiffs that they could not limit the number of officers, and in response, Salvatore Day began to verbally assault the Officer Defendants. (*Id.* ¶ 21.) Plaintiffs deny that the Officer Defendants told Salvatore Day to calm down and that Salvatore Day told the officers that only one officer could enter his home. (Pls.' Opp'n 3 ¶¶ 20-21.)

Plaintiffs' two dogs came to the door and Officer Candido instructed Salvatore Day to place the dogs in a secure location so that he could speak with him. (Officer Defs.' Br. 7 ¶¶ 24-25.) Plaintiffs contend that once the dogs came to the front door, Candido ordered Salvatore Day to "get the goddamn dogs away from the doorway." (Pls.' Opp'n 6 ¶ 7.) Both sides agree that the front door then closed, although they disagree whether the door was slammed, (Officer Defs.' Br. 7 ¶ 26), or if it was simply shut, (Pls.' Opp'n 6 ¶ 8.)

2

The Officer Defendants then allege the following set of events: 1) Salvatore Day allegedly continued to yell and be irate toward Officer Candido after the door was subsequently opened and hit Candido in the chest. (Officer Defs.' Br. 7-8 ¶ 27.) 2) Candido then attempted to arrest Salvatore Day and when Candido took control of Salvatore Day's arm Officer Candido was pulled into the home. (*Id.* at 8 ¶¶ 28-29.) 3) Officers Cavallo and Reynolds followed Officer Candido into the home and attempted to gain control of Salvatore Day's other arm. (*Id.* ¶ 31.) 4) The officers eventually were able to restrain and gain control of Salvatore Day and were able to handcuff him. (*Id.* ¶¶ 32-34.) Plaintiffs' son, Salvatore Day, Jr., was also arrested after advancing "aggressively toward the officers" and shouting expletives. (*Id.* ¶¶ 35-40.)

Plaintiffs contend a different set of events transpired: Once Joanne Day removed the dogs, the Officer Defendants forcefully opened the door, entered the home, and "attacked" Salvatore Day. (Pls.' Opp'n 7 ¶¶ 9-14.) The "attack" included various applications of physical force to Salvatore Day's face, back and neck. (*Id.* ¶¶ 10-14.)

Both Parties agree that Salvatore Day was eventually restrained by the Officer Defendants and placed into a police car and transported to the Jackson Township Police Station. (Officer Defs.' Br. 10 ¶ 50.) Plaintiffs, however, allege that Salvatore Day was "dragged down his snow covered driveway wearing only wet socks and thrown in the police car." (Pls.' Opp'n 7 ¶ 18.)

Neighbors of Plaintiffs, including Suzy Johnson and her husband Bruce Johnson, witnessed portions of the incident. (Officer Defs.' Br. 9-10 ¶¶ 44-52.) When deposed, the Johnsons testified that the incident happened very quickly. (*Id.* 10 ¶¶ 48, 51.) Neither of the Johnsons saw any of the Officer Defendants "punch or kick" Salvatore Day. (*Id.* 10 ¶¶ 49, 52.)

Plaintiffs agree that Salvatore Days' "claims of excessive force are limited to the incident with the [Officer Defendants] at [their] home." (Supervisor Defs.' Br. 1 ¶ 7; Pls.' Opp'n to Supervisors 2 ¶¶ 1-9.)

Salvatore Day was charged with burglary, terroristic threats, and aggravated assault on a police officer with no weapon and resisting arrest. (Officer Defs.' Br. 10 ¶ 57.) He was admitted into New Jersey's Pretrial Intervention Program ("PTI") in order to avoid prosecution for the charges. (*Id.* 11 ¶ 58.)

While at the Jackson Township Police Station, Salvatore Day was treated by EMS for a cut that, according to Plaintiffs, was sustained from being slammed into the wall. (Pls.' Opp'n 8 ¶ 21.) Plaintiffs state that Salvatore Day was diagnosed with the following injuries: cervical, thoracic and lumbosacral sprains; disc herniation at C3-4; disc bulges at C4-5, C5-6, and C6-7; cervical radiculopathy, and status post C4 transforaminimal epidural injections. (*Id.* ¶ 23.)

Plaintiffs' Opposition to the Supervisor Defendants' Motion also contains information regarding the internal affairs policies of the Jackson Police Department. (Pls.' Opp'n to Supervisors 3-5 ¶¶ 7-15.) Fifteen (15) excessive force internal affairs investigations took place between 2005 and 2010, none of which resulted in a finding that an officer used excessive force. (*Id.* 3 ¶¶ 7-8.) There is also additional information regarding the use of force and excessive force complaints lodged against Officers Reynolds, Conover and Candido. (*Id.* 4-7 ¶¶ 10-29.) Reynolds, Candido and Vidalis filed a total of thirty-five (35) use of force reports between 2007 through 2010.[2] (*Id.* 4-5 ¶¶ 10-13.) Conover and Reynolds were the subject of an internal affairs investigation regarding alleged use of excessive force stemming from a common incident. (*Id.* 5 ¶¶ 16-26.) Both officers were exonerated as to the excessive force complaint; charges against

---

[2] The time frames covered by the use of force reports span slightly differing time periods. The difference is not material to this Opinion.

Conover for use of expletives and lack of demeanor were sustained. (*Id.* 6 ¶ 23.) Candido was also the subject of an internal affairs investigation regarding alleged use of excessive force. (*Id.* 7 ¶¶ 27-29.) The complaint was deemed "unfounded." (ECF No. 34-10.)

Plaintiffs' filed an internal affair complaint regarding the use of force at their home. (Pls.' Opp'n to Supervisors 7-11 ¶¶ 30-62.) It was investigated by Captain Newman. (*Id.* 7 ¶ 32.) Plaintiffs allege the investigation was lacking because Plaintiffs and the accused officers were never interviewed by Captain Newman, as required by Jackson Police Guidelines and the Attorney General Guidelines. (*Id.* 10-11 ¶¶ 52-59.) Captain Newman exonerated the Officer Defendants. (*Id.* 11 ¶ 60.) The investigation was reopened after Plaintiffs filed the present lawsuit. (*Id.* ¶¶ 61-62.)

Plaintiffs' opposition to the Supervisor's Motion also includes various information about allegedly lax training policies regarding use of force on the part of the Jackson Police Department. (*Id.* 12-19 ¶¶ 63-97.) Plaintiffs also refer to three additional lawsuits filed against the Township or its officers related to excessive force, all of which were filed by Plaintiffs' Counsel. (*Id.* 18-19 ¶¶ 90-97.)

**B.    Plaintiffs' Amended Complaint**

Plaintiffs' first count is a 42 U.S.C. § 1983 claim alleging Use of Excessive Force (hereinafter "Excessive Force"). It names Defendants Candido, Cavallo, Reynolds, Vidalis and/or Fictitious Defendants John Does 1-5 and alleges that Salvatore Day sustained bodily harm and was deprived of his right to be secure in his person against unreasonable seizures as a result of the unlawful physical abuse by the aforementioned Defendants. (Am. Compl. 4-5 ¶¶ 2-3, ECF No. 15.)

The second count names Defendants Candido, Cavallo, Reynolds, Vidalis and/or Fictitious Defendants John Does 1-10 and alleges Failure to Intervene in the assault and arrest of Salvatore Day, which allegedly infringed on his Fourth and Fourteenth Amendment rights. Plaintiffs claim that Salvatore Day suffered physical injury, medical expenses, lost wages and mental anguish in connection with said deprivation of constitutional rights. (Am. Compl. 5-6 ¶¶ 3-6.)

Count three names Defendants Sergeant Decker, Conover, Candido, Cavallo, Reynolds, Vidalis and/or Fictitious Defendants John Does 1-10  and is a 42 U.S.C. § 1983 Abuse of Process claim. It alleges that the aforementioned Defendants "arrested [Salvatore Day]; caused bail to be posted; denied Plaintiff[s] the opportunity to obtain the bail amount from his brother and pressured [Joanne Day] to use a bail bonds company of Defendant's choosing." Plaintiffs also allege that Defendants made false statements of fact, or otherwise misrepresented the facts of their encounter with the Salvatore Day, which lead to the initiation of the criminal prosecution against Salvatore Day. (Am. Compl. 6-7 ¶¶ 2-5.)

Count four names Sgt. Decker, Det. Conover, and Fictitious Defendants John Doe 2 and John Does 6-10. Plaintiffs claim Supervisory Liability for the actions of the subordinate officers, which allegedly infringed upon Plaintiffs' Fourth and Fourteenth Amendment rights. (Am. Compl. 8 ¶¶ 2-5.)

Count five names the Jackson Township Police Department, Chief Kunz and Fictitious Defendants John Does 6-10 and is captioned "Section 1983 Unlawful Policy, Custom, Practice/Inadequate Training." It alleges that Jackson, Chief Kunz and/or John Does 6-10 failed to properly train Defendants Kunz, Decker, Conover, Candido, Cavallo, Reynolds, Vidalis and

Fictitious Defendants John Does 1-10 and thereby approved of the unlawful conduct of the aforementioned Defendants. (Am. Compl. 8-11 ¶¶ 2-10.)

The sixth count is a § 1983 Demand for Prospective Injunctive Relief. It alleges that Plaintiffs are entitled to injunctive relief against all Defendants. This includes:

    a)    A permanent restraining order enjoining Defendants from "encouraging, teaching, promoting or training" other Jackson police officers from "falsely arresting, maliciously prosecuting, maliciously abusing process, and/or using excessive force against citizens and/or arrestees."

    b)    An order compelling Jackson to take corrective measures against the practices listed in part (a).

    c)    An order compelling Jackson to provide regular training sessions to its officers.

    d)    An order compelling Jackson to take action against officers who engage in unlawful activity.

    e)    An order permanently restraining Defendants Candido, Cavallo, Reynolds, Vidalis and Fictitious Defendants from "arresting citizens without probable cause, physically abusing and using excessive force against citizens and/or arrestees."

    f)    An order permanently restraining Jackson from employing Defendants Candido, Cavallo, Reynolds, Vidalis in a capacity whereby they would be able to effectuate an arrest; clerical "desk duty" is the only role Plaintiffs feel these officers are fit for.

    g)    Any other relief the Court deems proper and just.

(Am. Compl. 11-12 ¶¶ 1-2.)

Count seven alleges a supplemental state law claim of assault and battery against Defendants Candido, Cavallo, Reynolds, Vidalis and Fictitious Defendants John Does 1-5. Salvatore Day claims that the Defendants physically injured him without justification and as a result, he allegedly suffered permanent physical and emotional injuries. (Am. Compl. 12-13 ¶¶ 2-5.)

Count eight alleges the common law claim of abuse of process and names Defendants Candido, Cavallo, Reynolds, Vidalis and Fictitious Defendants John Does 1-5. It alleges that the

Defendants maliciously used a legal process to accomplish an ulterior motive, for which Salvatore Day allegedly suffered. (Am. Compl. 13-14 ¶¶ 2-7.)

The ninth count alleges a violation of the New Jersey Civil Rights Act ("NJCRA"). It names Defendants Candido, Cavallo, Reyolds, Vidalis and Fictitious Defendants, alleging that through their excessive force and abuse of process, they deprived Salvatore Day of his rights under the NJCRA. N.J. Stat. Ann. § 10:6-1 et. seq. (Am. Compl. 14-15 ¶¶ 2-3.)

The tenth count is an intentional infliction of emotional distress ("IIED") claim and it names Defendants Candido, Cavallo, Reynolds, Vidalis and John Does 1-5. It alleges that the actions of these Defendants in their use of excessive force and assault and battery of Salvatore Day were "intentional, extreme and outrageous." (Am. Compl. 15-16 ¶¶ 2-5.)

The eleventh count is a negligence claim and names Defendants Candido, Cavallo, Reynolds, Vidalis and John Does 1-5. It alleges that the Defendants had a duty to Salvatore Day to "not expose him to an unreasonable risk of injury" and that Defendants breached that duty, which was the proximate cause of his injuries in violation of New Jersey common law. (Am. Compl. 16 ¶¶ 2-7.)

The twelfth count is a derivative loss of consortium claim on behalf of Salvatore Day's wife, Joanne Day. (Am. Compl. 17 ¶¶ 1-3.)

## II.    **Legal Standard**

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A district court considers the facts drawn from the "materials in the record, including depositions, documents, electronically stored information, affidavits . . . or other materials" and must "view the inferences to be drawn from the underlying facts in the light most favorable to

the party opposing the motion." Fed. R. Civ. P. 56(c)(1)(A); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the non-moving party. *Id.* at 248-49. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48.

## III.   Analysis

As an initial matter, the Court makes note of the Parties opinions as set forth on the record during oral argument. First, and as consented to by Plaintiffs' Counsel on the record, Plaintiffs have consented to the dismissal their § 1983 and Common Law Abuse of Process Claims. Therefore, Count Three and Count Eight are dismissed with prejudice. Next, and as also consented to by Plaintiffs' Counsel, Plaintiffs' Count Four, alleging a § 1983 Supervisory Claim against Defendants Decker and Conover, is also dismissed with prejudice. Finally, with Plaintiffs' consent, Count Eleven alleging negligence will also be dismissed with prejudice.

### A.   The Officer Defendants' Motion for Summary Judgment

#### 1)   *Heck* does not Bar Plaintiffs' Claims

The Officer Defendants argue that Salvatore Day's entrance into PTI for his resisting arrest and aggravated assault on a police officer charges bars his § 1983 claim for excessive force and failure to intervene. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). The Court declines to adopt the Officer Defendants' position.

*Heck* held that a § 1983 claim is generally only permissible if termination of a plaintiff's underlying criminal charges were resolved in his favor. *Heck*, 512 U.S. at 486-47 ("a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ."); *Hendrix v. City of Trenton*, No. 06-3942 (FLW), 2009 WL 5205996, at *3 (D.N.J. Dec. 29, 2009) ("Further, a plaintiff generally cannot maintain a § 1983 action unless the 'termination of the prior criminal proceeding [was resolved] in favor of the accused.'") (alteration in original) (quoting *Gilles v. Davis*, 427 F.3d 197, 210 (3d Cir. 2005)). A § 1983 plaintiff may proceed, however, even if his underlying criminal case was terminated in a manner unfavorable to him, "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against [him] . . . ." *Heck*, 512 U.S. at 487.

Regarding favorable termination, the Court must determine whether Salvatore Day's entrance and completion of PTI should be considered an unfavorable outcome. Although the Third Circuit has not ruled in a published opinion on this matter, the Court holds that entrance into and completion of PTI should be considered an unfavorable termination of Salvatore Day's underlying criminal charges. *See Fernandez v. City of Elizabeth*, 468 F. App'x 150, 154 (3d Cir. 2012) (holding that PTI is an unfavorable termination); *Gilles v. Davis*, 427 F.3d 197, 211 (3d Cir. 2005) (plaintiff's entrance into Pennsylvania's Accelerated Rehabilitative Disposition Program, which *Fernandez* found to be substantially similar to PTI, held to be an unfavorable termination and triggering the *Heck* analysis); *Hendrix*, 2009 WL 5205996, at *5 ("participation in New Jersey's PTI program does not meet the favorable termination requirement of *Heck*").

The essential inquiry in this case, therefore, is whether a finding that the Officer Defendants used excessive force would necessarily invalidate or be inconsistent with Salvatore Day's entrance into PTI regarding his resisting arrest and aggravated assault on a police officer. Cases within the District and Circuit have held that a conviction/plea/PTI enrollment resulting from an assault on a police officer and/or resisting arrest are not an absolute bar to a plaintiff's § 1983 excessive force claim because a police officer can still be found to have used excessive force in such a situation.

In *Nelson v. Jashurek*, the Third Circuit held that the district court's grant of the defendant's motion to dismiss plaintiff's § 1983 excessive force claim because plaintiff had been convicted of resisting arrest was improper. 109 F.3d 142, 145 (3d Cir. 1997). The *Nelson* Court stated that a criminal defendant convicted of resisting arrest "was not necessarily barred from bringing a section 1983 excessive force action . . . because 'it is possible for a finding that [the defendant] was resisting arrest to coexist with a finding that the police used excessive force to subdue him.'" *Id.* at 146 (quoting *Simpson v. City of Pickens,* 887 F. Supp. 126, 129 (S.D. Miss. 1995)).

This view has been echoed in other cases. In *Lora-Pena v. F.B.I.*, the Third Circuit held that "[w]e cannot agree with the District Court that [the plaintiff's] convictions for resisting arrest and assaulting federal officers bars his civil suit at the Rule 12(b)(6) stage." 529 F.3d 503, 506 (3d Cir. 2008). The Court supported its reversal of the district court, stating that the plaintiff's "convictions for resisting arrest and assaulting officers would not be inconsistent with a holding that the officers, during a lawful arrest, used excessive (or unlawful) force in response to his own unlawful actions." *Id.*

11

The Honorable Freda L. Wolfson's ("Judge Wolfson") decision in *Hendrix*, *supra*, is also instructive to the Court. In addressing a defendant's motion to dismiss, Judge Wolfson found that a determination of whether the plaintiff's conviction for resisting arrest and assault on an officer would be invalidated by a successful § 1983 action was impossible because the "[d]efendant simply ha[d] not provided the Court with any facts regarding the incident at issue that were admitted to by [the plaintiff] before entering into the PTI program, other than the Indictment." *Hendrix*, 2009 WL 5205996, at *12. This paucity of facts regarding what the plaintiff admitted to as part of his entrance into PTI, was critical. In light of that, Judge Wolfson held that "even if [plaintiff] did use force on [defendant] during his arrest, it would not invalidate his disposition through the PTI program because a jury can still find that [defendant] used excessive force on [plaintiff] while effectuating his arrest." *Id.*

In *Garrison v. Porch*, the Third Circuit overturned the district court's grant of summary judgment to a defendant who claimed that the plaintiff's conviction for simple assault and purposefully resisting arrest was a bar to the plaintiff's § 1983 claim. 376 F. App'x 274, 277 (3d Cir. 2010). The defendant officer had argued that "because [plaintiff] pled guilty to assaulting the arresting officer, the force [defendant] used in taking [plaintiff] into custody could not have been excessive." *Id.* at 278. The *Garrison* court rejected that argument, stating that "the fact that [plaintiff's] threatened or attempted use of force was unlawful does not automatically mean that there is no use of force that [defendant] could have used in response which could have risen to the level of unreasonable and excessive." *Id.*

A final case deserves attention as well. In *Fernandez v. City of Elizabeth*, the Third Circuit affirmed the district court's dismissal of the plaintiff's § 1983 excessive force claim because of the plaintiff's participation in PTI after he was charged with aggravated assault on a

12

police officer arising from the same incident underlying the complaint. 468 F. App'x 150, 152-54 (3d Cir. 2012). The *Fernandez* court assumed, as a matter of law, that if the plaintiff's participation in PTI constituted an unfavorable "termination of the criminal charges against him . . . *Heck* precludes consideration of his § 1983 claim." *Id.* at 154.

In light of the foregoing cases, the Court has decided to follow *Nelson, Lora Pena, Hendrix* and *Garrison*, as well as other district court cases,[3] for the proposition that an unfavorable termination of a resisting arrest or assault on an officer charge is not necessarily a *Heck* bar to a plaintiff's § 1983 claim alleging excessive force. While some of the above cases have slight procedural differences from this case, namely that they dealt with a defendant's motion to dismiss, the Court concludes that the rule underpinning those decisions applies just as logically to the motion currently before the Court. Following discovery, there are simply no undisputed material facts in this case which allow the Court to determine as a matter of law that Plaintiffs' excessive force claim will necessarily invalidate or be in conflict with Salvatore Day's resisting arrest and aggravated assault charges for which he entered PTI. As such, summary judgment on this matter is denied without prejudice.

---

[3] *See Weber v. Rodriguez*, No. 07-2097 (RBK), 2011 WL 2555358, at *4 (D.N.J. June 27, 2011) (holding that "[b]ecause Plaintiff's conviction in state court [for resisting arrest and aggravated assault] is not inconsistent with a finding that [d]efendants used excessive force to arrest him, *Heck* does not bar Plaintiff's § 1983 claim" alleging excessive force, and thus, denying summary judgment); *Woodley v. Al-Ayoubi*, No. 09-1403 (KSH), 2011 WL 4594204, at * 6 (D.N.J. Sept. 2, 2011) (noting that a conviction for resisting arrest is "not inconsistent with a finding that Defendants used excessive force to arrest him" and upholding the plaintiff's § 1983 claim for excessive force); *Porter v. Dooley*, No. 09-6068 (RBK), 2011 WL 4007690, at *3 (D.N.J. Sept. 6, 2011) (denying defendant's motion for summary judgment in which it was argued that, based on the plaintiff's guilty plea to resisting arrest, *Heck* barred his § 1983 claim alleging excessive force).

### 2)   Defendants are not Entitled to Qualified Immunity

The Officer Defendants argue that their actions arresting Salvatore Day are entitled to qualified immunity and that Plaintiffs' claim of excessive force and failure to intervene must therefore be dismissed. The Court disagrees.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Two interests are balanced by the rule: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* The Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

A qualified immunity analysis requires consideration of two concepts. "First, a court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." *Pearson*, 555 U.S. at 232. "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* The second prong is only met when it would be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Although the inquiry is normally considered in that order, it need not be. *Id.* at 236.

Whether a public official's conduct is subject to qualified immunity is an issue of law to be decided by a judge. *Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002). However, "the

existence of disputed, historical facts material to the objective reasonableness of an officer's conduct will give rise to a jury issue." *Id.* at 278 (citing *Sharrar v. Felsing*, 128 F.3d 810, 828 (3d Cir. 1997)). Once those issues are resolved by a jury, for example by "special jury interrogatories[,] . . . the court can then determine, as a matter of law, the ultimate question of qualified immunity." *Id.* at 279.

Here, regarding the § 1983 excessive force and failure to intervene claims, there remain significant disagreements among the Parties regarding what actually occurred when the Officer Defendants responded to Salvatore Day's house and arrested him. An entirely different set of facts is alleged by each party. There simply are not enough undisputed facts for the Court to rely upon in order to determine if the Officer Defendants' actions were reasonable. As such, and according to *Curley*, the Officer Defendants' motion seeking a determination that they are entitled to qualified immunity on Plaintiffs' excessive force and failure to intervene claims must be denied without prejudice.[4]

### 3)   Plaintiffs' State Law Claims

As noted in regards to Plaintiffs' § 1983 claims and the Officer Defendants' argument that they are entitled to qualified immunity, genuine and material issues of fact remain in this case. Those disputed facts require the Court to deny the Officer Defendants' motion for summary judgment dismissing Plaintiffs' state law claims for assault and battery and IIED.

---

[4] This finding applies with equal weight to the Officer Defendants' motion seeking dismissal of Plaintiffs' claims under the NJCRA. Analysis of the NJCRA is subject to the same analysis as claims brought under § 1983. *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) ("This district has repeatedly interpreted NJCRA analogously to § 1983."); *Sussino v. New Jersey Div. of State Police*, No. 09-6278 (SRC), 2012 WL 5184582, at *8 (D.N.J. Oct. 18, 2012). Because an issue of fact remains regarding qualified immunity, determination of Plaintiffs' NJCRA claim is not possible at this juncture.

15

**B.** **Plaintiffs'** *Monell* **Liability Claim Against Jackson and Chief Kunz**

Count Five of Plaintiffs' Complaint alleges § 1983/*Monell* liability against the Jackson

Township Police Department and Chief Kunz for the unlawful policies, customs, practices and

inadequate training provided by Jackson and Kunz. A claim brought against a municipality under

§ 1983 can only be successful where the "municipality *itself* causes the constitutional violation at

issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694

("[A] local government may not be sued under § 1983 for an injury inflicted solely by its

employees or agents.") Municipalities, rather, may only be held liable "when execution of a

government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

may fairly be said to represent official policy, inflicts the injury that the government as an entity

is responsible under § 1983." *Id.* A failure to train may also be the basis for § 1983 municipal

liability. *Id.* at 387. The policy, custom or failure to train must be causally connected to the

constitutional deprivation. *Id.* at 385, 391.

"A government policy or custom can be established in two ways." *Andrews v. City of*

*Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990).

> Policy is made when a decisionmaker possess[ing] final authority to establish
> municipal policy with respect to the action issues an official proclamation, policy,
> or edict. A course of conduct is considered to be a 'custom' when, though not
> authorized by law, 'such practices of state officials [are] so permanent and well
> settled' as to virtually constitute law. In either of these cases, it is incumbent upon
> a plaintiff to show that a policymaker is responsible either for the policy or,
> through acquiescence, for the custom.

*Id.* (internal citations omitted).

First, the Court agrees with Jackson and Kunz that Plaintiffs have failed to provide any

evidence which demonstrates that it is the policy of the Township to violate the rights of its

citizens when effectuating an arrest.

16

The issue of custom, however, is more complicated. Plaintiffs have proffered undisputed facts which demonstrate that the Jackson Police Department, in some instances, has failed to follow the New Jersey Attorney General Guidelines related to internal affairs investigations. For example, Plaintiffs contend that Jackson fails to interview all of the parties to excessive force complaints, as required by the Guidelines. Plaintiffs further allege that Defendants do not adequately track complaints lodged against individual officers and use that history as either a factor in subsequent excessive force investigation or as part of an "Early Warning System" that might alert the Department to the presence of officers with a propensity to use excessive force. Defendants reject those contentions as unsupported or based upon depositions taken out of context.

It has long been the law in this Circuit that in order "to sustain a § 1983 claim for municipal liability, the plaintiff must 'simply establish a municipal custom coupled with causation-i.e., that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury.'" *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996) (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)). "The custom must demonstrate a 'deliberate indifference' towards the class of person whom might suffer a constitutional injury as a result of the custom." *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1070 (3d Cir. 1991). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (quoting *Bryan County*, 520 U.S. at 409). However, "[a]s long as the causal link is not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury." *Bielevicz*, 915 F.2d at 851.

In *Beck*, for example, the question of whether the municipal defendant was deliberately indifferent as to a custom of excessive force by its officers, a single one in particular, was found to be a jury question. In that case, the officer in question had five excessive force reports filed against him in the course of five years. *Beck*, 89 F.3d at 972. Moreover, "these written complaints were sufficient for a reasonable jury to infer that the Chief of Police of Pittsburgh and his department knew, or should have known, of [the officer in question's] violent behavior in arresting citizens . . . ." *Id.* at 973.

Here, when taking the facts in the light most favorable to Plaintiffs, as the Court must, Plaintiffs have stated a plausible claim that the customs of the Jackson Police Department, especially their allegedly lackadaisical internal affairs investigations related to excessive force, may have led to Salvatore Day's injuries at the hands of the Officer Defendants. *See Bielevicz, supra* (holding that as long as the causal link between a suspect custom and injury to the plaintiff is not "too tenuous," the issue is properly left to the jury). The Court acknowledges the distinctions between *Beck* and the case at bar, especially the greater frequency of complaints lodged against a single officer. The Court, however, taking the facts in the light most favorable to Plaintiffs, has determined that a reasonable jury could find that Jackson's Internal Affairs procedures were part of a custom which showed deliberate indifference to rights of those who might interact with its officers. *See White v. City of Trenton*, No. 06-5177 (FLW), 2011 WL 6779595, at *13 (D.N.J. Dec. 27, 2011), on reconsideration in part, 848 F. Supp. 2d 497 (D.N.J. 2012) (holding that the Trenton Police Department's failure to "fully implement a system to effectively track excessive force complaints" led to a situation in which police officers were "aware their conduct [would] most likely not be investigated and they [would] not be disciplined," and it therefore followed that the officers "may run roughshod over the

18

constitutional rights of citizens . . . ."). Plaintiffs' § 1983/*Monell* claim which seeks liability based upon a custom, will be allowed to proceed.

Failure to train may also constitute a § 1983 violation which a municipality may be held liable for. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to *deliberate indifference* to the rights of persons with whom the police come into contact." *Canton*, 489 U.S. at 388 (emphasis added). The focus is on the "adequacy of the training program in relation to the tasks the particular officers must perform." *Id.* at 390. The fact that "a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390-91. "Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct" because "adequately trained officers occasionally make mistakes [and] the fact that they do says little about the training program or the legal basis for holding the city liable." *Id.* at 391. "To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983." *Id.* In the end, "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389.

A plaintiff's claim is at its most "tenuous" when it "turns on [an allegation of] a failure to train." *Connick*, 131 S. Ct. at 1359. Unlike the evidence proffered regarding the existence of a custom, Plaintiffs have failed to provide any proof to the Court indicating that a failure to train exists which can be causally connected to the actions of the Officer Defendants. As such, Plaintiffs' § 1983/*Monell* claim based upon a failure to train is dismissed.

19

Plaintiffs' § 1983/*Monell* claim, alleging a custom or practice of excessive force, and lax internal investigations thereof, will be allowed to proceed to a jury when this matter goes to trial.

## IV.    Conclusion

For the reasons set forth above, and for other good cause shown, it is hereby ordered that Defendants Motions are GRANTED IN PART and DENIED IN PART. Counts Three, Four, Eight, and Eleven are DISMISSED WITH PREJUDICE. Count Six, § 1983 Municipal Liability will be permitted to proceed to trial but only on the basis that it seeks to prove liability based on the presence of a custom or practice.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: January 30, 2013

20